IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | : Chapter 11 |
| | : |
| SEMCRUDE, L.P., *et al.*, | : Case No. 08-11525 (BLS) |
| | : |
| Reorganized Debtors. | : |
| LUKE OIL COMPANY, | : |
| C&S OIL/CROSS PROPERTIES INC., | : |
| WAYNE THOMAS OIL AND GAS, and | : |
| WILLIAM R. EARNHARDT, | : |
| | : |
| Appellants, | : |
| | : |
| v. | : Civil Action No. 09-994-LPS |
| | : |
| SEMCRUDE, L.P., *et al.*, | : |
| | : |
| Appellees. | : |

## MEMORANDUM ORDER

At Wilmington this 21st day of May, 2012, having reviewed the motion to dismiss of

SemCrude, L.P. and its affiliated reorganized debtors (collectively, the "Reorganized Debtors" or

"Appellees") regarding the appeal (the "Appeal") filed by Luke Oil Company, C&S Oil/Cross

Properties Inc., Wayne Thomas Oil and Gas, and William R. Earnhardt (collectively, "Luke Oil"

or "Appellants"), and the papers filed in connection therewith;

IT IS ORDERED that the motion to dismiss the Appeal (the "Motion") (D.I. 6) is

GRANTED, for the reasons discussed below:

# I.   BACKGROUND¹ AND PARTIES' CONTENTIONS

1.      Luke Oil appeals from the following orders entered in the United States

Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"): (1) the Order

Establishing Procedures for the Resolution of Liens Asserted Pursuant to Producers' Statutory

Lien or Similar Statutes (the "Lien Procedures Order"); (2) the Order Denying Motion of Luke Oil

Company, *et al.*, on Behalf of Themselves and All Similarly Situated Persons for Reconsideration

of [the Lien Procedures Order] or, in the Alternative, for Certification to the Third Circuit of

Certain Issues (the "Reconsideration Order"); (3) the Order (and accompanying Opinion) entered

on June 19, 2009 in Adversary Proceeding No. 08-51445 (BLS) (the "June Decisions"); and

(4) the Order Confirming Debtors' Fourth Amended Joint Plan of Affiliated Debtors Pursuant to

Chapter 11 of the Bankruptcy Code (the "Confirmation Order"). (D.I. 1)

2.      By their Motion, the Reorganized Debtors contend that the Appeal (D.I. 1) should

be dismissed in its entirety as equitably moot. (*See* D.I. 7; D.I. 18)

3.      With respect to the subject Fourth Amended Joint Plan of Affiliated Debtors

Pursuant to Chapter 11 of the Bankruptcy Code (the "Plan"), the Reorganized Debtors point out

that the Plan was confirmed on October 28, 2009 by the Bankruptcy Court – over the objection of,

*inter alia*, Luke Oil; the Confirmation Order was not stayed. According to the Reorganized

Debtors, on November 30, 2009 (the "Effective Date") the Plan was consummated. The

Reorganized Debtors further state that they entered into numerous complex and intricate

transactions consistent with the Plan, including distributing $500 million in cash and $1 billion in

_____

¹For additional background, see *Manchester Securities Corp. v. Semcrude, L.P. (In re
Semcrude, L.P.) ("Manchester"),* 2011 WL 675033 (D. Del. Feb. 18, 2011), *aff'd, SemCrude,
L.P. v. Manchester Securities Corp. ("SemCrude"),* 456 F. App'x 167 (3d Cir. Jan. 3, 2012).

value of new common stock and warrants to thousands of creditors, all of which would be almost impossible to unravel.[2]

4.       Appellees submit that appeal of the Lien Procedures Order, the Reconsideration Order, and the June Decisions, like the appeal of the Confirmation Order, should be dismissed on the grounds of equitable mootness. Appellants state that they "do not seek to overturn the confirmation," but "[r]ather . . . simply seek their day in court." (D.I. 17 at 8) The Reorganized Debtors respond that while it is "unclear exactly what relief Appellants request," "it appears that Appellants' vision of 'their day in court' is the implementation of an entirely different set of procedures to determine lien rights in this bankruptcy case." (D.I. 18 at 5)

5.       As the Reorganized Debtors also explain, on September 8, 2008 certain of the Luke Oil appellants filed an adversary complaint, seeking class certification and alleging (as did other Oklahoma oil producers) a statutory trust under Oklahoma law. (*See* D.I. 7 at 3, 5-6; D.I. 9 at A-35 to A-52 (Adv. Pro. No 08-51407 (Bankr. D. Del.), D.I. 1, Compl.))

6.       Shortly after Appellants filed their adversary complaint, the Debtors negotiated the Lien Procedures Order with several large producers of oil and gas. (*See* D.I. 17 at 2)

> Through that order, the Bankruptcy Court determined that it would rule on certain issues of law common to multiple creditors through a 'test case' procedure where creditors could opt-in. If non-parties chose not to do so, the decisions on the issues of law likely would influence later decisions, but would not constitute res judicata against non-parties. Luke Oil suggested an alternative procedure,

---

[2]Among other things, the Reorganized Debtors: entered into two new credit facilities aggregating $625 million in financing; entered into a $300 million Second Lien Term Facility (as defined in the Plan); created a new corporate structure, including issuing shares of common stock and warrants; and distributed approximately $500 million of cash and approximately $1 billion in value of new common stock and warrants to thousands of creditors in accordance with the Plan. (*See* D.I. 7 at 2-3)

> whereby Luke Oil would serve as a class representative for an
> 'opt-out' class. The Bankruptcy Court chose to follow the 'test
> case' approach when it entered the Lien Procedures Order whereby
> 'the parties . . . present the Court with legal issues related to the
> [statutory lien and trust claims] in a coordinated and omnibus
> fashion that will allow the Court to determine and/or dispose of
> legal issues that apply to multiple parties through a single process.

(D.I. 7 at 6) The Lien Procedures Order was entered over objection, and Appellants' adversary

action was ultimately stayed. (*See id.*; D.I. 17 at 2)

7. After entry of the Lien Procedures Order, numerous other producers (who asserted

statutory lien and/or trust rights under the laws of Oklahoma and other states), as well as other

interested parties, filed suits consistent with the Lien Procedures Orders. While all parties,

including Luke Oil, were invited to participate in the relevant proceedings, Luke Oil declined.

(D.I. 7 at 6)

8. In connection with such proceedings, the Bankruptcy Court later entered the June

Decisions. Thereafter, the Debtors, Secured Lenders, and the Official Producers Committee

reached a settlement, whereby each party would support a reorganization plan. (*See id.* at 7) Such

settlement – agreed to by all of the major creditor groups of the Debtors – ultimately led to

inception of the Plan. Luke Oil withheld its support of the Plan; its objection was overruled.

## II. DISCUSSION

9. "The doctrine of equitable mootness provides that an appeal should be dismissed

as moot when, even though effective relief could conceivably be fashioned, implementation of

that relief would be inequitable." *SemCrude*, 4 F. App'x at 169; *see also In re Continental*

*Airlines ("Continental II")*, 203 F.3d 203, 209 (3d Cir. 2000). The determination of whether an

appeal is equitably moot requires a "discretionary balancing of equitable and prudential factors."

4

*In re Continental Airlines ("Continental I")*, 91 F.3d 553, 560 (3d Cir. 1996) (*en banc*).

Specifically, the Third Circuit has recognized five factors courts should consider in evaluating

whether an appeal should be dismissed under the doctrine of equitable mootness:

> (1) whether the reorganized plan has been substantially
> consummated; (2) whether a stay has been obtained; (3) whether the
> relief requested would affect the rights of parties not before the
> Court; (4) whether the relief requested would affect the success of
> the plan; and (5) the public policy of affording finality of
> bankruptcy judgments.

*Id.* Applying these factors here, the Court concludes that Luke Oil's appeal is equitably moot.

10.    The Plan has been substantially consummated. The Bankruptcy Code defines

"substantial consummation" as the:

> (A) transfer of all or substantially all of the property proposed by the
> plan to be transferred; (B) assumption by the debtor or by the
> successor to the debtor under the plan of the business or of the
> management of all or substantially all of the property dealt with by
> the plan; and (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2). The Third Circuit has already affirmed the determination of substantial

consummation of the Plan, stating:

> The Plan has been substantially consummated. . . . In this case
> those requirements [of 11 U.S.C. § 1101(2)] are clearly satisfied.
> As provided for by the Plan, the Debtors transferred assets to newly
> incorporated entities, issued new stock and warrants, entered into
> loan agreements and credit facilities, and distributed hundreds of
> millions of dollars to their prepetition creditors.

*SemCrude,* 456 F. App'x at 170.

11.    Next, "[b]ecause of the nature of bankruptcy confirmations . . . it is obligatory

upon appellant . . . to pursue with diligence all available remedies to obtain a stay of execution."

*Nordhoff Invs., Inc. v. Zenith Elecs. Corp.*, 258 F.3d 180, 186-87 (3d Cir. 2001) (internal

quotation marks omitted). Here, however, Luke Oil neither sought expedition of its appeal, nor

sought or obtained a stay of the Confirmation Order pending appeal. "The existence or absence of

a stay is a critical factor in determining whether to dismiss an appeal under the doctrine of

equitable mootness." *Kuntz v. Saul, Ewing, Remick & Saul (In re Grand Union Co.)*, 200 B.R.

101, 105 (D. Del. 1996). Indeed, it "is obligatory upon appellant . . . to pursue with diligence all

available remedies to obtain a stay of execution of the objectionable order . . . if the failure to do

so creates a situation rending it inequitable to reverse the orders appealed from." *SemCrude*, 456

F. App'x at 171 (internal quotation marks omitted).

      12.    Third, the impact of a possible reversal of the Confirmation Order upon numerous

third parties not before the Court favors a finding of equitable mootness. *See Manchester,* 2011

WL 675033, at *2 ("[G]ranting [Appellant] the relief it seeks would impact numerous third parties

not before the Court, including the Reorganized Debtors' creditors and stockholders."); *see also*

*SemCrude*, 456 F. App'x at 171. Equitable mootness "protects the interests of non-adverse third

parties who are not before the reviewing court but who have acted in reliance upon the plan as

implemented." *Continental I*, 91 F.3d at 562 (internal quotation marks omitted).

      13.    Moreover, dismissal under the equitable mootness doctrine is warranted "if the

relief requested . . . would jeopardize the success of the reorganization plan by causing its reversal

or unraveling . . . ." *In re Genesis Health Ventures, Inc.*, 204 F. App'x 144, 146 (3d Cir. Oct. 4,

2006) (internal quotation marks omitted). "A bankruptcy appeal will jeopardize the success of a

reorganization plan if granting the requested relief: (1) effectively impos[es] a different plan of

reorganization on the parties . . . or (2) create[s] an unmanageable, uncontrollable situation for the

Bankruptcy Court." *In re Spansion Inc.*, 2011 WL 3420441, at *11 (D. Del. Aug. 4, 2011)

(internal quotation marks and citations omitted). The Court must consider whether the appellant seeks "to knock the props out from under the authorization for every transaction that has taken place," pursuant to the confirmed Plan. *Nordhoff*, 258 F.3d at 189 (internal quotation marks omitted). Here, Appellants insist they "do not seek to overturn the confirmation," but rather "simply seek their day in court." (D.I. 17 at 8) The Court disagrees. It is unclear what Appellants hope to accomplish short of reversal of the Confirmation Order and the earlier, related decisions. *(See* D.I. 7 at 21; D.I. 18 at 1, 5; *see also generally* D.I. 2; D.I. 17; D.I. 21) Altering the Bankruptcy Court's determination in the manner Appellants request would jeopardize the entire reorganization Plan. *(See* D.I. 7 at 21-22)

14. Lastly, the Court finds that the public policy of affording finality to bankruptcy judgments weighs in favor of dismissing this appeal. "[T]he importance of allowing approved reorganizations to go forward in reliance on bankruptcy court confirmation orders may be the central animating force behind the equitable mootness doctrine." *Continental I*, 91 F.3d at 565. The Third Circuit has recently emphasized this point, stating:

> [W]e should ask whether we want to encourage or discourage
> reliance by investors and others on the finality of bankruptcy
> confirmation orders. The strong public policy in favor of
> maximizing debtors' estates and facilitating successful
> reorganization, reflected in the Code itself, clearly weighs in favor
> of encouraging such reliance.

*SemCrude,* 456 F. App'x at 171 (internal quotation marks omitted). Here, given the number of parties involved in the negotiation, approval, and substantial consummation of the Plan, the Court concludes that public policy favors leaving the Plan undisturbed.

## III.   CONCLUSION

15.    Consistent with the foregoing analysis, Appellees' motion to dismiss (D.I. 6) is GRANTED.

_____
UNITED STATES DISTRICT JUDGE